**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LIVINGSTON BENNETT, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:26-CV-03391 |
| v. | ) ) | |
| SWEET CANDY COMPANY, | ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) and 12(b)(1)**

Defendant Sweet Candy Company ("Sweet Candy" or "Defendant") submits this Memorandum of Law in support of its Motion to Dismiss Plaintiff, Livingston Bennett's, Complaint (the "Complaint"), pursuant to 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure, for failing to state a claim. For the reasons set forth below, this Motion is due to be granted.

**I.      INTRODUCTION**

Plaintiff Livingston Bennett ("Plaintiff") brings this action against Sweet Candy asserting that its website www.sweetcandy.com (the "Website") was and is not equally accessible to blind and visually-impaired consumers in violation of Title III of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12181, *et seq.* Plaintiff contends that the Website constitutes a place of public accommodation subject to the accessibility requirements of the ADA.  However, the fundamental and incurable defect in the Complaint is that Sweet Candy has an online store and Plaintiff has not pled any physical location he can visit to purchase goods (such as chocolate sticks)

1

#12123666v1

from Sweet Candy.  As other Courts have found, a website is not a place of public accommodation under Title III of the ADA, rendering the Complaint subject to dismissal under Rule 12(b)(6).

Furthermore, the Complaint is a nearly identical Complaint that Mr. Bennett has brought against 39 companies since September 11, 2025[1].  Plaintiff's boilerplate Complaint that he filed in this case and the other 38 cases in this district allege that he visited a website and that he could not purchase a product using his keyboard with his screen reading software (see, generally, ¶ 37 of Complaint(s)).  Plaintiff alleges that he wanted to buy "chocolate sticks" but does not allege why he sought out this specific product, and does not sufficiently allege an intent to return. Plaintiff's allegations are insufficient to demonstrate standing under Rule 12(b)(1).

Lastly, Plaintiff also attempts to plead a count for declaratory relief, which is not a separate cause of action but rather a form of relief that can be granted in relation to the underlying ADA claim (in fact, this is the only form of relief available under Title III of the ADA).  Given that dismissal of his ADA claim is required, the Court should dismiss his request for declaratory relief.

## II.     PERTINENT ALLEGATIONS

Defendant is an "online store" that sells goods, including candy products to the public through its Website.  [Doc. 1, ¶¶ 21, 28].  Plaintiff alleges that he is a "visually-impaired and legally blind person who requires screen-reading software to read website content using his computer."  [*Id.* at ¶ 2].  Plaintiff alleges that "Defendant is denying blind and visually impaired individuals throughout the United States equal access to the goods and services Defendant provides to their non-disabled customers through the Website." [*Id.* at ¶ 4].  Specifically, Plaintiff alleges that he "browsed and intended to make an online purchase [sic] chocolate sticks on the Website"

---

[1] CM/ECF, https://pcl.uscourts.gov/pcl/pages/search/findParty.jsf (search for "Livingston Bennett") (last visited May 12, 2026).

#12123666v1

but was "denied a shopping experience like that of a sighted individual due to the Website's lack of variety of features and accommodations." [*Id.* at ¶ 10]. Plaintiff alleges that "[b]ecause Defendant's Website is not equally accessible to blind and visually-impaired consumers, it violates the ADA." [*Id.* at ¶ 11]. This argument relies on the contention that "Defendant's Website is a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7)." [*Id.* at ¶¶ 21, 59]. Plaintiff also alleges that even though he allegedly could not place an online order on Defendant's Website, he "still wants to purchase chocolate sticks on the Website" and "intends to visit the Website again immediately upon Defendant correcting the access barriers." [*Id.* at ¶ 41].

## III. ARGUMENT

### A. Legal Standards

#### i. 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). This requirement is satisfied when the factual content in the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"In *Bell Atlantic*, the Supreme Court rejected the more expansive interpretation of Rule 8(a)(2) that 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle

#12123666v1

him to relief,' *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957); *Bell Atl.*, 550 U.S. at 561-63; *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007)." *Rogers*, 2024 U.S. Dist. LEXIS 35688, at *2-3. "Now 'it is not enough for a complaint to avoid foreclosing possible bases for relief; it must actually suggest that the plaintiff has a right to relief . . . by providing allegations that 'raise a right to relief above the speculative level.'" *Id.*, at *3 citing *Concentra Health Servs.*, 496 F.3d at 777 (quoting *Bell Atl.*, 550 U.S. at 555).

ii.     *12(b)(1)*

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of a case where the Court lacks subject matter jurisdiction. When faced with a jurisdictional challenge, the Court accepts as true the well-pleaded factual allegations found in the complaint, drawing all reasonable inferences in favor of the plaintiff. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2017). However, a factual challenge lies where "the complaint is formally sufficient but the contention is that there is in fact no subject matter jurisdiction." *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003). The law is clear that when considering a motion that launches a factual attack against jurisdiction, "'[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Evers v. Astrue*, 536 F.3d 651, 656-57 (7th Cir. 2008) (quoting *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007)). Indeed, federal courts "have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Bazile v. Finance System of Green Bay, Inc.*, 983 F.3d 274, 281 (7th Cir. 2020) citing *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).

4

B.      **Defendant's Website is Not a Place of Public Accommodation Under Title III of the ADA.**

Plaintiff fails to state a claim for relief because Defendant's Website is not a place of public accommodation under the ADA.  To state a claim for relief under Title III of the ADA, a plaintiff "must allege (1) that [he] is disabled within the meaning of the ADA; (2) defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) defendant discriminated against [him] by denying [him] the full and equal opportunity to enjoy the services that defendant provides." *Morey v. McDonald's Corp.*, No. 18-cv-1137, 2018 U.S. Dist. LEXIS 240851, at *10 (N.D. Ill. Nov. 26, 2018) (emphasis added).

In *Henry v. Omoi, Inc.*, Hon. Steven C. Seeger, denied a proposed order for a consent decree between the parties regarding a settled website accessibility lawsuit. *Henry v. Omoi, Inc.*, No. 25-cv-3151, 2026 U.S. Dist. LEXIS 46591 (N.D. Ill. Mar. 6, 2026). [2]  In doing so, Judge Seeger explained that websites are intangible digital platforms that fall outside the statutory definition of places of public accommodation, which the statute explicitly limits to enumerated physical locations and facilities. *Id.*, at *8-9. Judge Seeger explained that the "ADA prohibits discrimination in a 'place of public accommodation'" and that while the ADA does not define the word "place," the statute enumerates twelve specific categories of private entities, each describing a *tangible*, *physical establishment*. *Id.* at *6-7. Judge Seeger directly stated that "a website is not a place.  You can't physically go there.  The world wide web isn't a place in the world.  If someone asked you to name your favorite places, you probably wouldn't mention the New York Times cooking webpage (as great as it is). The phrase as a whole sheds light on the meaning, too. 'Place' does not stand alone. The statute uses the phrase 'place of public accommodation.' The last three

---

[2] David B. Reyes of Equal Access Law Group, PLLC also represented *Henry* in that matter.

words modify the first one. A 'place' doesn't count unless it's a place 'of public accommodation.'" *Id.* at *7. Judge Seeger continue, "a website does not appear to fall within the statutory definition of a 'public accommodation'" as that there are "boatloads of examples" and "a reference to a website is nowhere to be found." *Id.* at *7-8. Importantly, a website does not fit within any of these enumerated categories given that it's not an inn, hotel, restaurant, theater, auditorium, store, or any other physical establishment. *Id.*

Judge Seeger's interpretation is also consistent with Seventh Circuit authority, notwithstanding Plaintiff's likely reliance on a single sentence from *Doe v. Mut. of Omaha Ins. Co.*, which Plaintiff will presumably cite for the proposition that the Seventh Circuit held that websites are places of public accommodation under the ADA based on the statement that: "[t]he core meaning of [section 302(a) of Title III of the ADA] plainly enough, is that the owner or operator of a store, hotel, restaurant, dentist's office, travel agency, theater, Web site, or other facility (whether in physical space of in electronic space) that is open to the public cannot exclude disabled persons from entering the facility and, once in, from using the facility in the same way that the non-disabled do." *Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557, 559 (7th Cir. 1999).

However, that case and the language was not the product of any analysis regarding whether a website *itself* constitutes a place of public accommodation. Indeed, neither *Doe* nor the later decision in *Morgan v. Joint Admin Bd.*, 268 F.3d 456 (7th Cir. 2001), examined whether a nexus is required between a website and a physical location, or *even addressed* whether the defendants' websites were connected to physical spaces at all. Rather, because both defendants were insurance companies – entities expressly covered by the ADA – the existence of physical places of public accommodation were implied, rendering any discussion of a "Web site" purely incidental to the court's reasoning. Indeed, it cannot be plausibly argued that the Seventh Circuit intended in 1999,

6

#12123666v1

without analysis, to announce a sweeping rule that *every website is itself a public accommodation regardless of its connection to a physical place* – as such a reading would have opened the floodgates of Title III liability to virtually *any website*, transactional or otherwise, and produced the sort of absurd results that the courts are obligated to avoid.

Indeed, as Judge Seeger correctly points out, these "cases have a questionable footing", and other circuits and courts have correctly held that "websites are not places of public accommodation." *See Omoi, Inc.*, 2026 U.S. LEXIS 46591, at *8 citing *Gil v. Winn-Dixie Stores, Inc.*, 993 F.3d 1266, 1276 (11th Cir.), *opinion vacated on other grounds*, 21 F.4th 775 (11th Cir. 2021) (holding website not place of public accommodation, but later vacated as moot); *Winegard v. Newsday LLC*, 556 F. Supp. 3d 173, 180 (E.D.N.Y. 2021) ("[T]he text of the ADA's definition of 'public accommodation' clearly refers to physical places, and does not include stand-alone websites."); *see also Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1014 (6th Cir. 1997) ("[A] public accommodation is a physical place."); *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 614 (3d Cir. 1998) ("[W]e do not find the term 'public accommodation' or the terms in 42 U.S.C. § 12181(7) to refer to non-physical access or even to be ambiguous as to their meaning."); *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000) ("[S]ome connection between the good or service complained of and an actual physical place is required."); *Langer v. Pep Boys Manny Moe & Jack of Cal.*, No. 20-cv-06015, 2021 U.S. Dist. LEXIS 8680, at *15 (C.D. Cal. 2021) ("On their own, websites are not a place of public accommodation.); *see also id* citing *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000) (holding that the ADA covers "actual, physical places where goods or services are open to the public, and places where the public gets those goods or services"); *Magee v. Coca-Cola Refreshments USA, Inc.*, 833 F.3d 530, 534 (5th Cir. 2016) (holding, in the context of standalone vending machines, are not

7

'sales establishments' under the plain meaning of the term and therefore are not 'places of public accommodation' under Title III of the ADA" and public accommodations do not apply to equipment simply because it seels goods, as the machine itself is not a physical place.); *Fernandez v. Gainful Health, Inc.*, No. 25-cv-2696, 2025 U.S. Dist LEXIS 256003, at *3 (S.D.N.Y. 2025) (Holding that "the ADA does not apply to standalone websites" and rejecting the plaintiff's argument that reading the ADA to focus on physical locations would frustrate Congress's purpose).

Here, Plaintiff fails to state a claim because he admits that Defendant is an "online store" and thus relies on the contention that the Website itself is a place of public accommodation. [Doc. 1, ¶¶ 21, 28] (emphasis added). There are no allegations in the Complaint that the Website has any connection to any physical place Plaintiff can visit or is a service extension of a place Plaintiff can visit to purchase chocolate sticks. Indeed, as other courts have found, a standalone website itself is *not* considered a place of public accommodation, as Section 12181(7) does not explicitly address "online stores" or other similar services. See *Weyer,* 198 F.3d 1104, at 1114. Accordingly, because Defendant's standalone Website is not entitled to Title III's protections, Plaintiff's ADA claim must be dismissed with prejudice pursuant to Rule 12(b)(6) for failure to state a claim.

C. **Plaintiff Cannot Demonstrate Any "Real and Immediate Threat" of Future Injury Needed to Support His Claims for Prospective Injunctive Relief and Counts I & II Must be Dismissed**

The Complaint should also be dismissed because Plaintiff lacks standing. "The doctrine of standing imposes a non-negotiable limit on the power of a federal court." *Carello v. Aurora Policemen Credit Union*, 930 F.3d 830, 833 (7th Cir. 2019). "It is rooted in Article III, which limits a federal court's power to the resolution of 'Cases' or 'Controversies.'" *Id.* (quoting U.S. Const. art. III, § 2). Because the standing requirement enforces a constitutional restraint on the judicial

8

power, federal courts must "always require that a litigant have 'standing' to challenge the action sought to be adjudicated in the lawsuit" before proceeding to the merits of a claim. *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982). To establish standing, "a plaintiff must allege an injury in fact that is traceable to the defendant's conduct and redressable by a favorable judicial decision." *Casillas v. Madison Ave. Assocs.*, 926 F.3d 329, 333 (7th Cir. 2019).

The Supreme Court has described the injury in-fact requirement as the "[f]irst and foremost" element of standing. *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998). To satisfy this element, Plaintiff must allege that he suffered an injury that is "both concrete *and particularized*." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548, 194 L. Ed. 2d 635 (2016). And – importantly – because he seeks injunctive relief, Plaintiff must also demonstrate that he faces a "real and immediate" threat of future injury; "a past injury alone is insufficient to establish standing for purposes of prospective injunctive relief." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (citation omitted); *Carello*, 930 F.3d at 833 (dismissing an ADA website accessibility case due to Plaintiff not being able to bank at the defendant credit union, thus there could be no harm to him if the website was inaccessible). "The plaintiff must present facts and tangible reasons to support an intent to return rather than conclusory statements or allegations." *Cohan v. Kohl's, Inc.*, 2024 U.S. Dist. LEXIS 145186, at *5 (N.D. Ill. Aug. 15, 2024) citing *Scherr v. Marriott International*, 703 F.3d 1069, 1076 (7th Cir. 2013); *see also Loadholt v. Dungarees*, Inc., No. 22-CV-4699 (VEC), 2023 U.S. Dist. LEXIS 26006, at *4 (S.D.N.Y. Feb. 15, 2023) ("In the virtual world, the third [standing] requirement can be met by non-conclusory, plausible factual allegations from which it is reasonable to infer, based on the past frequency of visits and the plaintiff's

9

articulated interest in the products or services available on the particular website, that the plaintiff intends to return to the website.").

Here, Plaintiff's generic, boilerplate, and conclusory allegations that he "*intends to* visit the Website *again immediately* upon Defendant correcting the access barriers" and that he "still wants to purchase chocolate sticks on the Website" – are clearly not enough to confer standing as Plaintiff fails to allege a real and immediate threat of future injury. [Doc. 1, ¶ 41].

Further, the Complaint does not sufficiently allege *why* he intends to return to the Website and purchase chocolate sticks. Why is he interested in Defendant's candy over the thousands of other retailers that sell candy? Are Defendant's chocolate sticks different than any other chocolate sticks on the market? Why not purchase chocolate sticks from another seller online? What makes this product different *in his mind* from other candy retailers? Why did he not call Defendant to purchase the product? Why would he wait until the Website is allegedly accessible to purchase these specific chocolate sticks? The Complaint answers none of these burning questions. Instead, he baldly claims, as he does in dozens of other complaints, that he intends to return and "will revisit the website again immediately upon Defendant correcting the numerous accessibility barriers" and that he still wants to purchase chocolate sticks. [Doc. 1, ¶ 41]. However, "[t]o find standing on the paltry allegations here would allow any sensory-impaired person to sit down at their computer, visit 50 websites (possibly after being referred to them by their non-sensory-impaired lawyer), and bring 50 lawsuits. Standing requires more." *Winegard v. Golftec Intellectual Prop. LLC*, 674 F. Supp. 3d 21, 25 (E.D.N.Y. 2023). Quoting the Supreme Court's holding in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Second Circuit (whose lower courts have had thousands of cases filed in the past years) concluded that "judicial experience and common sense suggest" that these complaints "are a result of their mass production," thereby rendering

10

"each Plaintiff's cookie-cutter assertion of standing implausible." *Calcano v. Swarovski North America Ltd., 36 F.4th 68, 73 (2d Cir. 2022)* (quoting *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937).

A court heard a similar standing argument in an almost identical case (that had more specific allegations). In that case, the visually impaired Plaintiff alleged he wanted to go onto the subject website and purchase a board game. *See Loadholt v. Game Goblins, LLC*, 2023 U.S. Dist. LEXIS 164876 (S.D.N.Y. Sep. 18, 2023). The Court analyzed and concluded:

> "Plaintiff alleges that he visited the website three times over a five-month period, to 'brows[e] the online store' and 'potentially mak[e] a purchase of some board games so that he could host friends and play games with them.' Am. Compl. ¶ 23. He further claims that he 'would still like to return to the [w]ebsite to browse and potentially purchase these products once the online store is made accessible to him,' *id.* ¶ 33, assertions similar to those in *Calcano*, which were rejected by the Second Circuit. Indeed, he does not explain what board games he is interested in, whether Defendant is the only retailer who sells those games, or why he will return to Defendant to purchase them as soon as the accessibility barriers are cured. Without additional factual details, Plaintiff fails to 'nudge [his] claims across the line from conceivable to plausible,' and has not shown that he has suffered an injury that is 'concrete and particularized,' Accordingly, Defendant's motion to dismiss Plaintiff's ADA and NYCHRL claims for lack of standing is GRANTED." (internal citations omitted). *See Loadholt*, 2023 U.S. Dist. LEXIS 164876, at *6.

Further, "many courts have concluded that a 'serial plaintiff's extensive litigation history can undermine his professed intent to return.'" *Access 4 All, Inc. v. Chicago Grande, Inc.*, No. 06 C 5250, 2007 U.S. Dist. LEXIS 35304, at *23 (N.D. Ill. May 10, 2007) citing *Molski v. Mandarin Touch Restaurant*, 385 F. Supp. 2d 1042, 1046 (C.D. Cal. 2005). The fact that Plaintiff has filed 38 identical complaints since September 2025 clearly undermines his contention that he is actually interested in purchasing chocolate sticks through the Website.

Given that only prospective injunctive relief (and not damages) is available under Title III of the ADA, Count I should be dismissed for lack of standing. *Cerda v. Chi. Cubs Baseball Club,*

11

#12123666v1

*LLC*, 405 F. Supp. 3d 780, 786 (N.D. Ill. 2019) (explaining that Title III of the ADA authorizes only prospective injunctive relief); *Lewis v. Walmart Corp.*, 2020 U.S. Dist. LEXIS 214750, at *7 (N.D. Ill. Nov. 17, 2020) (dismissing a claim under Title III of the ADA where the plaintiffs had alleged only past injury, which is insufficient to establish standing for prospective injunctive relief). And, of course, Count II should be dismissed as it merely seeks relief that is entirely dependent upon the underlying claim in Count I. *Obi v. Chase Home Fin., LLC*, , at *13 (N.D. Ill. May 15, 2012) (explaining that declaratory relief is not a cause of action, but rather a form of a remedy that a plaintiff may request in his prayer for relief).

**D.      Plaintiff's Requests for Declaratory Relief Must Be Dismissed.**

In addition to his ADA claim, Plaintiff also brings a claim for declaratory relief. However, "courts in this district routinely dismiss claims for declaratory judgment where the claim 'substantially overlaps with Plaintiff's substantive claims.'" *City of Rockford v. Malinckrodt ARD, Inc.*, 360 F. Supp. 3d 730, 777-78 citing *Cohn v. Guaranteed Rate, Inc.*, 130 F. Supp. 3d 1198, 1205 (N.D. Ill. 2015). Given that Plaintiff's substantive claims under the ADA are subject to dismissal, his requests for declaratory relief should also be dismissed.

**IV.     CONCLUSION**

WHEREFORE, Plaintiff's Complaint must be dismissed with because its standalone website is not subject to protection under Title III of the ADA.  Plaintiff's pleading defect is incurable, and the Complaint should be dismissed with prejudice.  Further, Plaintiff has failed to allege standing. Accordingly, the Court should grant Sweet Candy's Motion, dismiss Plaintiff's Complaint with prejudice, and order any further relief it deems appropriate.

12

#12123666v1

Dated: May 14, 2026        Respectfully submitted,

By:    /s/ Adi Kanlic
       Adi Kanlic
       O'HAGAN MEYER, LLC
       One East Wacker Drive
       Suite 3400
       Chicago, IL 60601
       Ph: 312-422-6100
       Fx: 312-422-6110
       akanlic@ohaganmeyer.com

       *Attorney for Defendant*
       Sweet Candy Company

13

#12123666v1

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 14, 2026, all counsel of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document using the Court's CM/ECF system:

Alison Chan, Esq.
EQUAL ACCESS LAW GROUP, PLLC
4903 Avenue N
Brooklyn, NY 11234
O: 844-731-3343 | D: 929-442-2154
achan@ealg.law
*ATTORNEYS FOR PLAINTIFF*

*/s/ Adi Kanlic*
Adi Kanlic, ARDC No. 6320888
O'Hagan Meyer LLC
One East Wacker Drive, Suite 3400
Chicago, Illinois  60601
312.422.6100 –T  312.422.6110 – F
akanlic@ohaganmeyer.com

14

#12123666v1