UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LIVINGSTON BENNETT, individually, and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>Sweet Candy Company,<br><br>    Defendant. | Civil Action No. 1:26-cv-03391<br><br>Hon. Jorge L. Alonso |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT, SWEET CANDY COMPANY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

**EQUAL ACCESS LAW GROUP, PLLC**
Alison Chan, Esq.
4903 Avenue N
Brooklyn, NY 11234
Phone: (929) 442-2154
Email: achan@Ealg.law
*Attorneys for Plaintiff Livingston Bennett*

Dated: June 4, 2026

## I.  PRELIMINARY STATEMENT

Plaintiff LIVINGSTON BENNETT ("Mr. Bennett" or "Plaintiff"), by and through his undersigned counsel, Equal Access Law Group, PLLC, respectfully submits this Memorandum of Law in Opposition to Defendant Sweet Candy Company's Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(1). *See* Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem."), ECF No. 11.

## II.  INTRODUCTION

Plaintiff Livingston Bennett, a visually impaired individual who relies on screen-reading software to navigate the internet, brings this action pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA"), alleging that Defendant Sweet Candy Company's website, https://www.sweetcandy.com (the "Website"), contained access barriers that prevented her from purchasing products. Defendant's motion asks this Court to do two things that it cannot do: to disregard controlling Seventh Circuit precedent, and to resolve a disputed factual question—Plaintiff's subjective intent—on the face of the pleadings. Simply, both of Defendant's requests should be rejected.

First, Defendant contends that its commercial Website is categorically beyond the reach of Title III because it is not a "physical place." The Seventh Circuit has held the opposite. In *Doe v. Mutual of Omaha Insurance Co.*, 179 F.3d 557, 559 (7th Cir. 1999), and again in, *Morgan v. Joint Administration Board,* 268 F.3d 456, 459 (7th Cir. 2001), the Court of Appeals held that Title III reaches the operator of a "store, hotel, restaurant, … Web site, or other facility (whether in physical space or in electronic space) that is open to the public," and explained that "[t]he site of the sale is irrelevant to Congress's goal of granting the disabled equal access to sellers of goods and services." And *Doe* draws the distinction that decides this case: Title III governs access to goods and

1

services—exactly what Plaintiff alleges he was denied—even though it does not regulate the content of what a business sells. Defendant's entire Rule 12(b)(6) argument rests on a single, non-binding district-court order, *Henry v. Omoi, Inc.,* and on out-of-circuit decisions applying a "physical nexus" requirement that the Seventh Circuit has never adopted. Neither can displace binding precedent. Plaintiff has pleaded each element of Title III claim, and Rule 8 requires nothing more.

Second, Defendant challenges Plaintiff's standing, but it does so by demanding factual detail that Article III does not require at the pleading stage and by inviting the Court to hold Plaintiff's disability-rights advocacy against him. Plaintiff alleges that he visited the Website, that its access barriers denied him the equal enjoyment of goods he sought to purchase, and that he intends to return as soon as those barriers are remedied. Accepted as true, those allegations establish a concrete and particularized injury and a real and immediate threat of future injury. That other businesses have also denied Plaintiff access—resulting in other lawsuit—does not strip him of standing to redress the distinct injury he suffered here.

For the foregoing reasons, Defendant's Motion should be denied in its entirety.

## III.    <u>FACTUAL BACKGROUND</u>

Mr. Bennett is a legally blind individual residing in Cook County, Illinois, who relies on screen-reading software — specifically JAWS — to navigate the internet. (Plaintiff's Complaint ("Compl.") ¶¶ 2, 18-19, 25, 38), ECF No. 1. Defendant Sweet Candy Company operates their Website, through which it sells candy and confectionary products to the public, including chocolates, gummies, and hard candies. (Compl. ¶¶ 40-41). On January 5, 2026, Mr. Bennett attempted to access and purchase a candy product, specifically chocolate sticks from Defendant's Website, but encountered numerous accessibility barriers that prevented him from making his

purchase. (Compl. ¶¶ 10, 40). He intends to return to the Website immediately upon Defendant remediating its accessibility barriers and remains interested in purchasing a wide variety of products offered there, including his desired product, chocolate sticks, from his January 5, 2026, attempt. (Compl. ¶¶ 10, 11, 41). These accessibility barriers clearly violate the Web Content Accessibility Guidelines, version 2.2 ("WCAG 2.2") — the international standard published by the World Wide Web Consortium — and prevent screen-reader users, including Mr. Bennett from independently navigating Defendant's Website, understanding its content, using interactive features, and completing transactions on equal terms with sighted users. (Compl. ¶¶ 26, 32-38).

## IV.  LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(6)

To survive a motion under Rule 12(b)(6), a complaint need only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Id.* Plausibility "is not akin to a probability requirement"; a claim is plausible when the pleaded facts permit a reasonable inference that the defendant is liable. *Id.* The question at this stage is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim.

### B.  Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits dismissal where the Court lacks subject-matter jurisdiction. A Rule 12(b)(1) challenge to jurisdiction may be either facial or factual. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). Where a defendant mounts a facial challenge—contending that the complaint itself fails to allege a sufficient basis for

jurisdiction—the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in Plaintiff's favor. *Silha v. ACT, Inc.,* 807 F.3d 169, 173 (7th Cir. 2015); *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 392 (7th Cir. 2020); *uBID, Inc. v. GoDaddy Group, Inc.,* 623 F.3d 421, 423 (7th Cir. 2010). Where, on the other hand, a defendant mounts a factual challenge—relying on extrinsic evidence to dispute the truth of jurisdictional allegations—the Court may look beyond the pleadings and consider submitted evidence to determine whether subject-matter jurisdiction in fact exists. *Silha*, 807 F.3d at 173; *Apex Digital,* 572 F.3d at 443. Even in that circumstance, however, where the jurisdictional question is intertwined with the merits of the plaintiff's claim, courts must take care not to resolve genuinely disputed facts against the non-moving party without the benefit of discovery. *Fry v. ReBiz, Ltd. liability Co.*, No. 1:25-cv-01020-SLD-RLH, 2025 U.S. Dist. LEXIS 124627, 10 (C.D. Ill. July 1, 2025). To the extent Defendant attempts a factual challenge pointing to Plaintiff's other filings, that material does not negate the injury Plaintiff alleges as to this Website and this Defendant.

## V.   ARGUMENT

### A.  Plaintiff States a Title III Claim Because Binding Seventh Circuit Precedent Holds That the ADA Reaches Websites.

To state a Title III claim, a plaintiff must allege that (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the defendant denied him the full and equal opportunity of the goods or services it offers. *Morey v. McDonald's Corp.*, No. 18 C 1137, 2018 U.S. Dist. LEXIS 240851, 10 (N.D. Ill. Nov. 26, 2018); see also 42 U.S.C.S. § 12182. Plaintiff pleads each element: he is legal blind and uses screen-reading software (Compl. ¶ 2); Defendant is a private entity, 42 U.S.C. § 12181(6), that operates an online store open to the public through its Website (Compl. ¶ 21, 28);

4

and the Website's barriers denied him the equal ability to browse and purchase goods (Compl. ¶¶ 4, 10-11). Defendant does not dispute that Plaintiff is disables, that Defendant is a private entity, or that Plaintiff was denied equal access. Its sole contention is that the Website cannot be a "place of public accommodation." That contention is irreconcilable with how the Seventh Circuit reads Title III.

### 1. The Seventh Circuit construes Title III to guarantee equal access regardless of where the transaction occurs.

The Seventh Circuit has twice described Title III's reach in terms that extend to commerce conducted electronically. In *Doe v. Mutual of Omaha Insurance Co.*, the court explained that "[t]he core meaning of [Title III's anti-discrimination provision], plainly enough, is that the owner or operator of a store, hotel, restaurant, dentist's office, travel agency, theater, Web site, or other facility (whether in physical space or in electronic space) that is open to the public cannot exclude disabled persons from entering the facility and, once in, from using the facility in the same way that the nondisabled do." 179 F.3d 557, 559 (7th Cir. 1999) (emphasis added). Two years later, *in Morgan v. Joint Administrative Board*, the court reaffirmed that the situs of a sale does not control: "The site of the sale is irrelevant to Congress's goal of granting the disabled equal access to sellers of goods and services." 268 F.3d 456, 459 (7th Cir. 2001).

Plaintiff does not overstate these decisions. The quoted language was not the dispositive holding of either case; both resolved disputes over the content of insurance products on other grounds. But that does not deprive the language of weight. It reflects the Court of Appeals' deliberate, twice-stated articulation of Title III's "core meaning," and carefully considered dicta of the Court of Appeals is entitled to substantial weight and is regularly followed by the district courts of this Circuit. See *United States v. Crawley*, 837 F.2d 291, at 292–293. Defendant identifies

no Seventh Circuit decision holding that a commercial website falls outside Title III—because there is none.

### 2. Doe's reasoning confirms coverage of Plaintiff's access claim.

Far from helping Defendant, *Doe* draws the very distinction that defeats its motion. The *Doe* plaintiffs lost because they challenged the content of the product sold—an AIDS benefit cap— and the court held that Title III governs access to goods and services but does not dictate what a business chooses to sell or on what terms. 179 F.3d 557, at 559–564. Plaintiff's claim is the opposite. He does not ask Sweet Candy to change its candy, its prices, or any term of sale. He alleges only that he cannot use the Website at all—that its barriers prevent a blind shopper from browsing and purchasing the same goods a sighted shopper can. (Compl. ¶¶ 4, 10–11, 37.) That is a pure access claim, and access is precisely what *Doe* says Title III protects: the right of disabled persons to enter "and, once in, [to use] the facility in the same way that the nondisabled do." *Id.* at 559. *Doe* thus confirms, rather than forecloses, coverage of Plaintiff's claim.

Consistent with that reasoning, the district courts of this Circuit have relied on *Doe* and *Morgan* to sustain website-accessibility claims at the pleading stage, alongside the First Circuit's parallel holding that Title II is not confined to physical structures; that is binding here, and it forecloses Defendant's motion. *See Carparts Distribution Center, Inc. v. Automotive Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12, 19 (1st Cir. 1994). Indeed, in the very decision Defendant invokes for its standing argument, the Seventh Circuit proceeded on the assumption that a website-accessibility claim is cognizable under Title III and resolved the case on standing grounds alone. *See Carello v. Aurora Policemen Credit Union*, 930 F.3d 830, 833–835 (7th Cir. 2019).[1]

---

[1] Notably, *Carello* did not hold that a website falls outside Title III. The court assumed the website-accessibility claim was cognizable and resolved the case on standing because the plaintiff was statutorily

### 3. A single, non-binding district-court order cannot displace controlling circuit precedent.

Defendant's argument depends almost entirely on *Henry v. Omoi, Inc.*, No. 25-cv-3151, 2026 U.S. Dist. LEXIS 46591 (N.D. Ill. Mar. 6, 2026), a single district judge's order declining to enter a proposed consent decree.[2] But district courts in this Circuit are bound by the decisions of the Court of Appeals, and a district-court order—however thoughtfully written—cannot overrule *Doe* and *Morgan*. To the extent Defendant characterizes the controlling language as dictum, that does not help it: "considered" dicta of the Court of Appeals is entitled to substantial weight and should not be cast aside by a district court. See *United States v. Crawley*, 837 F.2d 291, 292–293 (7th Cir. 1988). *Doe*'s statement of "[t]he core meaning" of Title III, reaffirmed in *Morgan*, is precisely the kind of deliberate, reasoned pronouncement that binds the courts of this Circuit in practice. The Court should follow the Seventh Circuit's framework, not a lone order departing from it.

### 4. Defendant's out-of-circuit authorities apply to minority "nexus" rule the Seventh Circuit has not adopted.

Defendant's remaining authorities do not alter the conclusion. Its circuit cases—*Parker v. Metropolitan Life Insurance Co.*, 121 F.3d 1006, 1014 (6th Cir. 1997), *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 614 (3d Cir. 1998), *Weyer v. Twentieth Century Fox Film Corp.,* 198 F.3d 1104, 1114 (9th Cir. 2000), and *Gil v. Winn-Dixie Stores, Inc.*, 993 F.3d 1266 (11th Cir.), vacated

---

ineligible to join the defendant credit union. The decision thus confirms, rather than undermines, that such claims are cognizable under Title III in this Circuit.

[2] Defendant's reliance on *Henry v. Omoi, Inc.* is further misplaced because that order arose on the court's review of a proposed consent decree—not on an adversarial, fully briefed motion to dismiss—and therefore reflects neither a binding holding nor the benefit of adversarial presentation on the controlling Seventh Circuit authority discussed below.

as moot, 21 F.4th 775 (11th Cir. 2021)—adopt a "physical nexus" requirement the Seventh Circuit has never embraced. Tellingly, *Parker*, *Ford*, and *Weyer* arose in the same insurance- and benefits-coverage context as *Doe* and *Morgan*, yet the Seventh Circuit read the statute more broadly; this is not a question the Court of Appeals has left open. *Magee v. Coca-Cola Refreshments USA, Inc.*, 833 F.3d 530, 534 (5th Cir. 2016), is further afield still—it concerned a standalone vending machine, not a website. And Defendant's district-court citations are both non-binding and unpersuasive: *Langer v. Pep Boys* merely applies *Weyer*'s circuit rule, while *Winegard v. Newsday LLC* and *Fernandez v. Gainful Health, Inc.* reflect a view the Second Circuit has not adopted and on which district courts there are divided. None of these decisions can displace the Seventh Circuit's reading of Title III, least of all to defeat a claim at the pleading stage.

Because Defendant is a private entity operating an online store open to the public (Compl. ¶¶ 21, 28) and does not dispute that Plaintiff is disabled or that he was denied equal access, Plaintiff has stated a claim under the Seventh Circuit's reading of Title III. The Rule 12(b)(6) motion should be denied.

### B. Plaintiff Adequately Alleges Article III standing.

To establish standing, a plaintiff must allege an injury in fact that is traceable to the defendant's conduct and redressable by a favorable decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Where, as here, a plaintiff seeks injunctive relief, he must also allege a "real and immediate" threat of future injury. *Scherr v. Marriott Int'l, Inc.,* 703 F.3d 1069, 1074 (7th Cir. 2013). Plaintiff's allegations satisfy each requirement.

#### 1. Plaintiff alleges a concrete and particularized injury in fact.

Plaintiff alleges that he visited the Website, that he browsed and intended to purchase chocolate sticks, and that the Website's access barriers denied him "a shopping experience like

that of a sighted individual." (Compl. ¶¶ 10, 37, 41.) In the ADA context, the denial of equal access caused by encountering accessibility barriers is itself the injury. *See Carello v. Aurora Policemen Credit Union*, 930 F.3d 830, 833–835 (7th Cir. 2019). That injury is concrete—Plaintiff actually attempted to use the Website and could not—and particularized—it affected him personally as a screen-reader user. Nothing more is required at the pleading stage.

**2.  Plaintiff alleges a real and immediate threat of future injury.**

Plaintiff alleges that he "still wants to purchase chocolate sticks on the Website" and "intends to visit the Website again immediately upon Defendant correcting the access barriers." (Compl. ¶ 41.) Those allegations—accepted as true—plead both an intent to return and the deterrent effect that the Seventh Circuit recognizes as a cognizable future injury: a disabled individual who is deterred from patronizing a public accommodation by known barriers need not engage in the "futile gesture" of repeated attempts to establish standing. *See Scherr*, 703 F.3d 1069, at 1074–1075; 42 U.S.C. § 12188(a)(1). Whether Plaintiff's intent to return is genuine is a question of fact; it cannot be resolved against him on the face of the pleadings.

Defendant's list of "burning questions"—why Plaintiff prefers this seller, whether its chocolate sticks differ from others, why he did not telephone instead—demands a level of pleading detail that neither Article III nor Rule 8 requires. A plaintiff need not justify his consumer preferences to invoke the protection of the ADA, any more than a sighted shopper must explain why he chose one candy store over another. These questions go, at most, to the merits and to evidence; they are not a proper basis for dismissal at the pleadings.

**3.  Plaintiff's history of enforcement litigation does not defeat his standing.**

Defendant urges the Court to discount Plaintiff's allegations because he has filed other accessibility suits. But a plaintiff's status as a frequent ADA litigant—or even a "tester"—does

9

not deprive him of standing. The Supreme Court long ago held that a tester who personally experiences discrimination suffers an injury sufficient for standing, regardless of motive. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373–374 (1982). And in *Acheson Hotels, LLC v. Laufer*, 601 U.S. 1 (2023), the Court vacated as moot without disturbing the principle that a plaintiff who encounters a barrier may sue. A plaintiff's motivation in seeking to enforce the ADA is irrelevant to whether he has suffered a concrete injury.

Defendant's contrary authorities—*Calcano v. Swarovski North America Ltd.,* 36 F.4th 68, 73 (2d Cir. 2022), and the Loadholt line, see, e.g. *Loadholt v. Game Goblins, LLC*, No. 23-cv-1644, 2023 U.S. Dist. LEXIS 164876 (S.D.N.Y. Sept. 18, 2023)—are out-of-circuit decisions that turned on their own pleadings and do not bind this Court. In any event, this Complaint is not the bare "cookie-cutter" pleading those cases criticized: Plaintiff identifies the specific product he sought (chocolate sticks), the specific conduct that barred him, and a specific intent to return once the barriers are cured. The number of suits Plaintiff has filed reflects the prevalence of inaccessible websites, not the absence of a real injury in any one of them. To hold otherwise would immunize the most pervasive violators from suit by the very plaintiffs most likely to encounter them.

### 4. At a minimum, any standing defect would warrant leave to amend, not dismissal with prejudice.

Even if the Court found Plaintiff's standing allegations wanting, dismissal with prejudice would be improper. Standing defects are generally curable by amendment and leave to amend should be freely given. *See* Fed. R. Civ. P. 15(a)(2). Plaintiff respectfully requests that any dismissal on standing grounds be without prejudice and with leave to replead.

### C. PLAINTIFF'S REQUEST FOR DECLARATORY RELIEF SURVIVES.

Defendant argues that the request for declaratory relief must be dismissed as derivative of the ADA claim. Because the ADA claim survives, so too does the related request for declaratory relief. To the extent Defendant contends that declaratory relief is a remedy rather than a freestanding cause of action, that is not a basis to dismiss the case; the Court may simply treat the request as part of Plaintiff's prayer for relief. *See* 28 U.S.C. § 2201. Dismissal of the request is warranted only if the underlying claim fails—and it does not.

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff Livingston Bennett respectfully requests that the Court deny Defendant's Motion to Dismiss Plaintiff's Complaint in its entirety. In the alternative, should the Court find any pleading deficiency, Plaintiff requests that any dismissal be without prejudice and with leave to amend. Plaintiff further requests such other and further relief as the Court deems just and proper.

Dated:  June 4, 2026,                                 Respectfully Submitted,

**EQUAL ACCESS LAW GROUP, PLLC**

<u>/s/ Alison Chan</u>
Alison Chan, Esq.
4903 Avenue N
Brooklyn, NY 11234
Phone: (929) 442-2154
Email: achan@Ealg.law
***Attorneys for Plaintiff Tammy Hampton***

11

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 4, 2026, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Alison Chan*
Alison Chan, Esq.
4903 Avenue N
Brooklyn, NY 11234
Phone: (929) 442-2154
Email: achan@Ealg.law
***Attorneys for Plaintiff Livingston Bennett***